[Cite as *In re T.H.*, 2019-Ohio-3045.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE T.H.                                   :
                                             :                No. 107947
A Minor Child                                :
                                             :
[Appeal by Father]                           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 25, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-17-904898

---

### *Appearances:*

Mark A. Stanton, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-Father ("father"), appeals the juvenile court's decision awarding permanent custody of his minor child to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm the juvenile court's decision.

{¶ 2} On March 24, 2017, CCDCFS filed a complaint for dependency and temporary custody following the child's birth due to mother's failure to provide appropriate care for the child and father's inability to establish paternity, and provide basic needs due to his criminal history. CCDCFS received emergency custody on April 17, 2017. On July 19, 2017, the child was adjudicated dependent and the agency was subsequently granted temporary custody in September 2017.

{¶ 3} After the child was placed in the custody of CCDCFS, father was evasive with CCDCFS, preventing the agency from referring him for case planning services. During that time, father did not seek visitation with the child. In fact, CCDCFS had no contact with father until he was apprehended in December 2017 on an outstanding capias on a criminal matter. Father was subsequently sentenced to three years in prison.

{¶ 4} Although father was in prison, his sister expressed an interest in visiting and caring for the child. However, because paternity had not been established, father's sister was not initially considered a relative for legal purposes. Following the establishment of paternity and a background check, paternal aunt was granted visitation with the child in June 2018. Between this time and the time of trial, paternal aunt attended four of the eight scheduled visitations.

{¶ 5} On October 13, 2017, the CCDCFS filed a motion to modify temporary custody to permanent custody. On May 21, 2018, father moved to terminate temporary custody and grant legal custody to his sister, the child's

paternal aunt. Hearings were held on the motions in July, August, and early October 2018.

{¶ 6} Testimony was given that the child's mother has had no contact with the minor child since the child's removal and placement with CCDCFS. Evidence established that mother had her parental rights terminated regarding another child who was placed with, and adopted by, the foster family where the minor child subject to this case was placed and currently lived.

{¶ 7} Testimony was presented by both the child's guardian ad litem ("GAL") and the foster mother, that the child has lived with the foster mother for almost her entire life — at the time of the hearings, the child was two and one-half years old. They testified that the child has a strong bond with her foster family, which includes the child's half-brother. According to the GAL, the child considers her foster family as her family and the home as her home. In his written report, the GAL noted that the child "appears to be thriving in her current environment." Foster mother testified that she wished to adopt the child.

{¶ 8} Paternal aunt testified that she wanted legal custody of the child to maintain the family relationship. The testimony and evidence revealed that she was declined consideration for the child's placement because of a situation involving her daughter, who was convicted of disorderly conduct, domestic violence, and assault. Additionally, paternal aunt admitted that she had a pending criminal charge and was recently convicted for driving under suspension. Testimony was presented, however, that the visitations between the child and

paternal aunt were appropriate and that the child actively engaged with the paternal aunt.

{¶ 9} Although the GAL testified that the child's bond with her foster family was strong and that she was thriving in her current environment, he recommended that the juvenile court deny CCDCFS's petition for permanent custody, but grant legal custody to foster mother and award paternal aunt visitation. The GAL justified his recommendation based his perception that the foster mother was "overstepping" her role as a foster parent and that it was in the child's best interest to protect the relationship she has with her biological family. The GAL made this recommendation despite conducting a thorough investigation and background check of the paternal aunt.

{¶ 10} On October 29, 2018, the juvenile court granted CCDCFS's motion to place the child in the permanent custody of CCDCFS and denied father's request for legal custody to the paternal aunt.

{¶ 11} Father now appeals, raising two assignments of error, which will be addressed together.

{¶ 12} In his first assignment of error, father contends that the juvenile court abused its discretion when it determined that permanent custody to CCDCFS was in the best interest of the child. Father raises as his second assignment of error that the juvenile court abused its discretion when it denied his motion for legal custody to a paternal aunt.

{¶ 13} Although R.C. 2151.412(H)(2) instructs the trial court to prioritize placing a child in the legal custody of a "suitable member of the child's extended family" when developing case plans, there is no such requirement in permanent custody determinations. *In re Tr.T.*, 8th Dist. Cuyahoga No. 106107, 2018-Ohio-2126, ¶ 17, citing *In re J.F.*, 8th Dist. Cuyahoga No. 105504, 2018-Ohio-96, ¶ 41. This court has stated, "[t]he willingness of a relative to care for a child does not alter what a court considers in determining whether to grant permanent custody. * * * If permanent custody to CCDCFS is in [the child's] best interest, legal custody to [a relative] necessarily is not." *In re V.C.* 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 60, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, at ¶ 11.

{¶ 14} In deciding what is in a child's best interest in a permanent custody proceeding, and contrary to father's position on appeal, the trial court need not find by clear and convincing evidence that termination of parental rights is the only option or that no suitable relative is available for placement. *In re V.C.* at ¶ 61, citing *In re Schaefer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. Rather, R.C. 2151.414 requires the court to find the best option for the child upon a weighing of all the relevant factors. *Schaefer* at ¶ 63. "The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.* Accordingly, father cannot challenge on appeal the failure to award legal custody to a relative in this matter; rather, the

challenge is limited to whether the trial court's decision to terminate his parental rights was proper. *See, e.g., J.F.* at ¶ 42 (parent has no standing to assert that the court abused its discretion by failing to give a relative legal custody). His second assignment of error is overruled.

{¶ 15} Termination of parental rights is an alternative of last resort but is sanctioned when necessary for the welfare of a child. *M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7. Under R.C. 2151.414, a trial court may grant permanent custody of a child to an agency if, after a hearing, the court determines by clear and convincing evidence that one of the factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies, and that an award of permanent custody is in the child's best interest. "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *In re C.B.*, 8th Dist. Cuyahoga No. 92775, 2011-Ohio-5491, ¶ 28, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). A juvenile court's decision in a custody proceeding will not be reversed absent a showing of an abuse of discretion. *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27.

{¶ 16} In this case, the trial court found that the child is abandoned. Father concedes that CCDCFS met this factor listed in R.C. 2151.414(B)(1)(b) to satisfy one of the requirements the juvenile court must find before terminating parental

rights.[1] Accordingly, father only challenges the juvenile court's determination that the grant of permanent custody was in the child's best interest.

{¶ 17} When determining the best interest of a child, R.C. 2151.414(D)(1) directs the court to consider all relevant factors, including, but not limited to: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (c) the custodial history of the child; (d) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors set forth in R.C. 2151.414(E)(7) through (11) apply. Although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent custody determination, "[o]nly one of these factors needs to be resolved in favor of the award of permanent custody." *In re A.B.,* 8th Dist. Cuyahoga No. 99836, 2013-Ohio-3818, ¶ 17.

{¶ 18} In this case, father claims that permanent custody was not in the child's best interest because there was a legally secure placement of the child with a paternal aunt who was willing to be the child's legal custodian. He claims that the trial court abused its discretion when it chose to permanently sever a family relationship when a secure placement with the child's paternal aunt was available.

---

[1] The juvenile court found that the child's mother has failed to parent or financially support the child. This finding has not been challenged on appeal, and mother is not a party to the appeal.

He contends that once visitations began between the paternal aunt and the child, the interaction between them was appropriate and the child actively engaged with the paternal aunt. Father supports his arguments based on the GAL's recommendation that legal custody be granted to the foster mother with visitation to the paternal aunt.

{¶ 19} As we have already addressed, the willingness of a relative to care for a child does not alter what the court must consider in determining permanent custody. *In re A.D.*, 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, ¶ 12. "'A court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody.'" *V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 62, quoting *M.S.*, 8th Dist. Cuyahoga No. 101693 and 101694, 2015-Ohio-1028, ¶ 11.

{¶ 20} Father's challenge is only one factor that the court can consider under R.C. 2151.414(D) — that a secure placement was possible without a grant of permanent custody to the agency. Even assuming that paternal aunt could provide a legal secure placement, the other factors weigh in favor of permanent custody.

{¶ 21} Regarding the child's interaction and relationships of the child, the trial court found that the child is bonded with her biological sibling, foster mother, and in the foster home — the only home that the child has really known. And despite the GAL's recommendation, foster mother did not seek legal custody; rather she expressed a desire to adopt the child if permanent custody was granted to CCDCFS. Finally, the GAL did not advocate that the paternal aunt be granted legal custody of

the child. In fact, the GAL testified that he would not advocate that the child be removed from placement with the foster mother. The GAL testified that the child was "thriving." Accordingly, the trial court's consideration of this factor in finding permanent custody to CCDCFS was in the child's best interest was not an abuse of discretion.

{¶ 22} Regarding the custodial history, the record reveals that two weeks after the child's birth, CCDCFS placed the child with foster mother because she previously adopted the child's four-year-old half-brother after serving as his foster mother for three years. The trial court's finding that the child has been in temporary custody since April 2017, approximately two weeks following her birth, is uncontroverted. Accordingly, the trial court's consideration of this factor in finding permanent custody to CCDCFS was in the child's best interest was not an abuse of discretion.

{¶ 23} The trial court also determined that although the child was too young to meaningfully express her wishes, the GAL expressed that all the children in the foster home were happy and well-adjusted. The testimony from both the GAL and foster mother revealed that the child has bonded significantly with her half-brother and foster family. Foster mother testified that the child and her half-brother are emotionally attached and that they comfort each other when the other is sad. Moreover, paternal aunt did not deny that the child is well-bonded with her current foster family. Accordingly, the trial court's consideration of this factor in finding

permanent custody to CCDCFS was in the child's best interest was not an abuse of discretion.

{¶ 24} The juvenile court did not discount the bond and relationship between the child and paternal aunt. In fact, the court in its order found it be in the child's best interest that permanent custody be granted, but also that "paternal aunt shall continue to have companionship time with the minor child." Accordingly, only the legal relationship between the minor child and paternal aunt is severed; the entire relationship is not. Moreover, the child continues to have a biological relationship through her current placement — with her half-brother.

{¶ 25} Accordingly, despite paternal aunt's willingness to assume legal custody of the child, clear and convincing evidence supports the trial court's determination that permanent custody is in the best interest of the child. The trial court's opinion demonstrates that it considered the factors in R.C. 2151.414(D) and found by clear and convincing evidence that an order of permanent custody is in the best interest of the child. Accordingly, the trial court did not abuse its discretion in granting permanent custody to CCDCFS.

{¶ 26} Father's first assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR